IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| ALOYSIUS BLACKCROW, | Cause No. CV 21-139-M-DWM |
| Plaintiff, | |
| vs. | ORDER |
| LAKE COUNTY et al., | |
| Defendants. | |

Plaintiff Aloysius Blackcrow, an inmate proceeding pro se and in forma pauperis, has filed a Complaint alleging that the State of Montana does not have legitimate criminal jurisdiction to prosecute him, a Native American, on the Flathead Reservation. (Doc. 2). Because Blackcrow's Complaint fails to state a claim for relief, it will be dismissed.

## I.    BLACKCROW'S ALLEGATIONS

Blackcrow's Complaint poses a legal question—does the State of Montana have criminal jurisdiction over him—without providing any facts regarding his legal status, the nature of his prosecution, or the court in which he was prosecuted, nor does it address why the Flathead Reservation's conveying of criminal jurisdiction to the State of Montana does not bar his claim. The Complaint mostly quotes verbatim, without attribution, from Justice Stewart's opinion in *Washington*

*v. Confederated Bands & Tribes of Yakima Indian Nation*, 439 U.S. 463 (1979).

Blackcrow's first argument is that the State of Montana never properly amended its Constitution to assume criminal jurisdiction over Native Americans found on the Flathead Reservation of the Confederated Salish and Kootenai Tribes ("CSKT"). (Doc. 2 at 2.) Blackcrow asserts that Montana's Constitution includes a disclaimer of authority over Indian Country and therefore cannot prosecute him. *Id.*

Blackcrow also asserts that the State of Montana's criminal jurisdiction was withdrawn by legislative action. In 2017, Senate Bill No. 310 was introduced at the Montana Legislature and finally signed into law on May 19, 2017. (Doc. 2 at 5.) The law was called "An Act Revising Laws Related to Criminal Jurisdiction on the Flathead Indian Reservation…" (Doc. 2 at 5.) Blackcrow's Complaint then goes on to quote the law extensively. The law provided a procedure by which the CSKT could, by tribal resolution, withdraw consent to being subject to the criminal jurisdiction of the State of Montana. Blackcrow further quotes from the CSKT Tribal code, which grants jurisdiction to the tribal court over "any tribal member, American or Canadian Indian, Alaskan Native found within the Flathead reservation and accused by the Tribes of the commission, within the Flathead reservation, of an offense" found in the tribal code. (Doc. 2 at 7.)

Blackcrow's request for relief is the dismissal of all charges filed against him in Lake County District Court. (Doc. 2 at 8.) Blackcrow contends Lake

County does not have criminal jurisdiction over him based on the laws identified above. Blackcrow here quotes extensively, without attribution, from Balyeat Law PC v. Pettit, which analyzed whether Lake County District Court had jurisdiction over a CSKT member on a debt collection action—a civil matter not obviously relevant to the proceedings here. *Balyeat Law, P.C. v. Pettit*, 1998 MT 252, 291 Mont. 196, 967 P.2d 398.

Blackcrow has also sought a preliminary injunction and temporary restraining order preventing prosecution of Native Americans in Lake County Court. (Doc. 2-1 at 1.) In this request, Blackcrow names for the first time as defendants Judge Deborah Kim Christopher, Judge James Manley, Steven Eschenbacher, James Lapotka, Benjamin Ancious and Molly Owen. (Doc. 2-1 at 1 – 2.)

## II.    SCREENING STANDARD

Blackcrow is a prisoner proceeding in forma pauperis so the Court must review his Complaint under 28 U.S.C. § 1915 and § 1915A. Sections 1915A(b) and 1915(e)(2)(B) require the Court to dismiss a complaint filed in forma pauperis and/or by a prisoner against a governmental defendant before it is served if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. A complaint is frivolous if it "lacks an arguable basis either in law or in fact."

*Neitzke v. Williams*, 490 U.S. 319, 325 (1989). "A case is malicious if it was filed with the intention or desire to harm another." *Andrews v. King*, 398 F.3d 1113, 1121 (9th Cir. 2005). A complaint fails to state a claim upon which relief may be granted if a plaintiff fails to allege the "grounds" of his "entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation omitted).

Rule 8 of the Federal Rules of Civil Procedure provides that a complaint "that states a claim for relief must contain . . . a short and plain statement of the claim showing that the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). That is, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). A complaint's allegations must cross "the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680.

There is a two-step procedure to determine whether a complaint's allegations cross that line. *See Twombly*, 550 U.S. at 556; *Iqbal*, 556 U.S. 662. First, the Court must identify "the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679, 680. Factual allegations are not entitled to the assumption of truth if they are "merely consistent with liability," or "amount to nothing more than a 'formulaic recitation of the elements' of a constitutional" claim. *Id.* at 679, 681. A complaint stops short of the line between probability and the possibility of relief where the facts pled are merely consistent

with a defendant's liability. *Id.* at 678.

Second, the Court must determine whether the complaint states a "plausible" claim for relief. *Iqbal*, 556 U.S. at 679. A claim is "plausible" if the factual allegations, which are accepted as true, "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. This inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). If the factual allegations, which are accepted as true, "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id. citing* Fed. R. Civ. P. 8(a)(2).

"A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardu*, 551 U.S. 89, 94 (2007); *cf*. Fed. Rule Civ. Proc. 8(e) ("Pleadings must be construed so as to do justice").

## III.  SCREENING ANALYSIS

For the following several reasons, Blackcrow's Complaint must be dismissed.

### A. Failure to exhaust state remedies

The first issue the Court must address is the nature of Blackcrow's Complaint. Blackcrow's allegations that Montana does not have jurisdiction to

prosecute him and his request for release from incarceration sound more in habeas corpus relief than a constitutional claim. "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).

The federal habeas statute, 28 U.S.C. § 2254, states:

The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

*Id.* § 2254(a). As relevant here, federal courts may not grant a writ of habeas corpus brought by an individual in custody pursuant to a state court judgment unless "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. §2254(b)(1)(A). The exhaustion requirement is grounded in the principles of comity and gives states the first opportunity to correct alleged violations of a prisoner's federal rights. *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). Blackcrow has not alleged that he has given the State of Montana's courts the opportunity to consider his request for habeas relief or the legality of his prosecution. As such, this claim must be dismissed for failure to exhaust his state remedies, if he is proceeding on a theory of habeas corpus.

**B. Failure to state a cognizable legal claim**

Blackcrow's allegations seem to hang on two arguments, though the Complaint is far from a "short and plain statement of the claim showing that the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). Blackcrow's quotation of a lengthy passage of *Washington v. Yakima Indian Nation* suggests that he believes Montana never properly assumed criminal jurisdiction over Indians on the Flathead Reservation. His second position is that after passage of Senate Bill 310, that jurisdiction was no longer valid. Neither of these arguments is legally valid, and the Complaint will be dismissed for failure to state a claim. Furthermore the allegations seem more appropriate for the Montana State Courts.

### 1.    Public Law 280

Blackcrow contends that "Montana did not amend their state constitution 'where necessary' to adequately assume criminal jurisdiction over Native American Indians on the Salish and Kootenai Reservation." (Doc. 2 at 1.) The language he uses to make his point comes from *Washington v. Yakima Nation*, in the portion of the opinion in which Justice Stewart recites the positions of the parties. *Washington v. Confederated Bands & Tribes of Yakima Indian Nation*, 439 U.S. 463, 481-483 (1979). The language is not the holding, which was that Washington's assumption of jurisdiction complied with the law, but rather prefatory language.

More relevant here, in another case, the U.S. Supreme Court stated that "it should be obvious that, to the extent that a claimed bar to state jurisdiction in these cases is premised on the respective state Constitutions, that is a question of state law over which the state courts have binding authority." *Arizona v. San Carlos Apache Tribe of Arizona*, 463 U.S. 545, 561 (1983). That is, as the court explained in *Arizona*, if the state believes its constitution grants it jurisdiction, that is a question of state law that can only be determined in the state's courts. In this case, the Montana Supreme Court has, in fact, decided this question, in *Lozeau v. Anciaux*, 397 Mont. 312, 314-5, 2019 MT 235, ¶8 (Mont. 2019), where it wrote "[a] review of precedent from this Court and the history of PL-280's application in Montana and the Flathead Indian Reservation indicates that the CSKT and the State did properly adopt PL-280 as it relates to felony criminal prosecutions." *See also State ex rel. McDonald v. Dist. Ct.*, 159 Mont. 156, 496 P.2d 78 (1972); *State v. Spotted Blanket*, 1998 MT 59, 288 Mont. 126, 955 P.2d 1347; *Balyeat Law, P.C. v. Pettit*, 1998 MT 252, 291 Mont. 196, 967 P.2d 398 *overruled in part on other grounds by Big Spring v. Conway (In re Estate of Big Spring)*, 2011 MT 109, 360 Mont. 370, 255 P.3d 121; *see also Campbell v. Crist*, 491 F. Supp. 586 (D. Mont. 1980).

Blackcrow fails to state a claim under the controlling state law precedent. He does not have a viable assertion that the State of Montana is without criminal jurisdiction to prosecute him.

### 2. Senate Bill 310

The recent legislation discussed by Blackcrow, Senate Bill 310, is codified at Mont. Code Ann. § 2-1-306, which provides the procedure by which CSKT may withdraw their prior consent to the State's criminal jurisdiction. The process involves several steps, including consultation with the governor and the attorney general, and a tribal resolution. Mont. Code Ann. § 2-1-306(2). The statute includes a parallel procedure by which the Lake County Commissioners can withdraw its consent to enforce criminal jurisdiction over CSKT. Mont. Code Ann. § 2-1-306(3).

Blackcrow's Complaint never alleges that CSKT or Lake County has, in fact, used this procedure to withdraw its consent to state criminal jurisdiction. The Court takes judicial notice of the media coverage at the time of the bill's passage, which explained the reasons why both CSKT and Lake County might be interested in a change of jurisdiction. *See, e.g., https://nbcmontana.com/news/local/lake-co-salish-kootenai-tribes-split-on-criminal-jurisdiction-bill*, visited on December 22, 2021. However, the Court can locate no further coverage that suggests any action has been taken by either party. As the situation currently stands, Lake County

continues to have criminal jurisdiction over CSKT members, and Blackcrow fails to state a claim on this ground.

### C. *Younger* abstention

Aside from the other infirmities in Blackcrow's Complaint, there is a strong policy against federal intervention in state judicial processes in the absence of great and immediate irreparable injury to the federal plaintiff. *Younger v. Harris*, 401 U.S. 37, 45 (1971); *see also Gooding v. Hooper*, 394 F.2d 146 (9th Cir. 1968), *cert. denied* 391 U.S. 917 (1968). *Younger* directs federal courts to abstain from granting injunctive or declaratory relief that would interfere with pending state judicial proceedings. *Martinez v. Newport Beach City*, 125 F.3d 777, 781 (9th Cir. 1997) *overruled on other grounds Green v. City of Tucson*, 255 F.3d 1086 (9th Cir. 2001) (citing *Younger*, 401 U.S. at 40-41). Federal courts may raise the issue of *Younger* abstention sua sponte. *Martinez*, 125 F.3d at 781 n.3 (*citing Bellotti v. Baird*, 428 U.S. 132, 143-44 n.10 (1976)); *see also San Remo Hotel v. City and County of San Francisco*, 145 F.3d 1095, 1103 n. 5 (9th Cir. 1998) (noting that the district and appellate courts can raise the issue sua sponte).

"Abstention in civil cases 'is appropriate only when the state proceedings: (1) are ongoing, (2) are quasi-criminal enforcement actions or involve a state's interest in enforcing the orders and judgments of its courts, (3) implicate an important state interest, and (4) allow litigants to raise federal challenges.'" *Cook*

*v. Harding*, 879 F.3d 1035, 1039 (9th Cir. 2018)(*quoting ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 759 (9th Cir. 2014), *Sprint Commc'ns., Inc. v. Jacobs*, 571 U.S. 69, 81 (2013)). If these "threshold elements" are met, then the Court must "consider whether the federal action would have the practical effect of enjoining the state proceedings and whether an exception to *Younger* applies." *ReadyLink*, 754 F.3d at 759 citing *Gilbertson*, 381 F.3d at 978, 983–84.

Here, the "threshold elements" of *Younger* are present. First, Blackcrow seeks dismissal of ongoing state criminal proceedings against him. State proceedings are criminal enforcement actions that implicate an important state interest to enforce the local and state laws. *See Younger*, 401 U.S. at 43-44. The State of Montana, through its state and local prosecuting offices, has a significant state interest in prosecuting conduct that constitutes a criminal offense under the laws of Montana. This Court may not interfere with those interests when the prosecutorial process is ongoing.

Blackcrow will have an adequate opportunity in the state district court to raise any issues he has regarding his Constitutional Rights. "[T]he threat to the plaintiff's federally protected rights must be one that cannot be eliminated by his defense against a single criminal prosecution." *Younger*, 401 U.S. at 46. Blackcrow has opportunities under Montana law to address any alleged violations

11

of his federal rights relative to his prosecution. (The Court does not perceive such allegations as the Complaint is currently construed, but that does not foreclose his option to pursue any such issues in state court.)

"*Younger* abstention is proper only when the federal relief sought would interfere in some manner in the state court litigation." *Meredith v. Oregon*, 321 F.3d 807, 816–17 (9th Cir. 2003). Here, a determination regarding Blackcrow's ongoing state prosecution would have the effect of interfering with the "state courts' ability to enforce constitutional principles and put the federal court in the position of making a premature ruling on a matter of constitutional law." *Gilbertson*, 381 F.3d at 984. To rule on Blackcrow's Complaint in these circumstances would impermissibly risk interfering with the State of Montana's administration of its judicial system.

If all four prongs of the *Younger* test are satisfied, then the Court must abstain from adjudicating Blackcrow's claims. Absent exceptional circumstances, district courts do not have discretion to avoid the doctrine if the elements of *Younger* abstention exist in a particular case. *City of San Jose*, 546 F.3d at 1092 (citation omitted). The recognized exceptional circumstances are limited to "a 'showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate.'" *Id.* (*quoting Middlesex County Ethics*

*Committee v. Garden State Bar Association*, 457 U.S. 423, 435 (1982)). Blackcrow has not alleged an exceptional circumstance sufficient to avoid abstention.

If abstention is appropriate under *Younger* and the federal plaintiff seeks only injunctive or declaratory relief, as Blackcrow does, the proper procedural remedy is dismissal of the federal action. *AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1148 (9th Cir. 2007). The Court concludes that abstention is proper, and Blackcrow's Complaint must be dismissed.

Based on the foregoing, the Court enters the following:

## ORDER

1.      Plaintiff's Complaint is DISMISSED for failure to state a federal claim.

2.      The Clerk of Court is directed to close this matter and enter judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure.

3.      Pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), Blackcrow's filing of this action counts as one strike against him.

DATED this 23rd day of December, 2021.

10:55 AM

_____
Donald W. Molloy
United States District Court Judge